IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DYNAMIC DIAGNOSTICS, LLC ) <br> D/B/A ALL CLEAR DIAGNOSTICS ) <br> AND CALIBRATION LLC, ) <br>   ) <br> Plaintiff, ) <br>   ) <br> v. ) <br>   ) <br> CHAD WILKEN, ) <br>   ) <br> Defendant. ) | CASE NO. 2:24-cv-310-RAH-SMD <br> [WO] |

# MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Dynamic Diagnostics, LLC seeks a preliminary injunction to enforce noncompete and non-solicitation agreements it made with Defendant Chad Wilken, its former employee, who allegedly established and currently carries on a business in direct competition with Plaintiff in Texas. Based on the evidence presented, a preliminary injunction will be entered.

## II. BACKGROUND

Plaintiff is an Alabama limited liability company that provides "same-day/next-day, on-site calibration and diagnostic support for" vehicles' electronics and safety features to "collision and body repair facilities throughout the southeastern United States, including the State of Texas." (Doc. 1 at 1.) Defendant is a resident and citizen of Texas, and from December 1, 2020, until March 15, 2024, Plaintiff employed him as a mobile automotive technician. (*Id.* at 2, 4.) During his employment, Defendant "received training and instruction relating to [Plaintiff's] technical processes, techniques, and methodologies," and its "development and

1

management of customer relationships[.]" (*Id.* at 4.) Defendant also "solicited business from and performed diagnostic and calibration services for" Plaintiff's customers in Harris, Montgomery, and Fort Bend Counties, Texas, near Houston. (*Id.*) Some of those customers included three Joe Hudson Collision Center locations in and around Houston. (*Id.* at 4–5.) "As part of his job, [Defendant] cultivated relationships with the personnel at these locations and gained sensitive, non-public information about their business and purchasing practices." (*Id.* at 5.)

On December 29, 2021, as a condition of continued employment, Defendant signed a Fair Competition Agreement with Plaintiff that contained noncompete and non-solicitation provisions. (*Id.*) The noncompete provision states, "During [Defendant's] employment with [Plaintiff] and for a period of two years following [Defendant's] termination date, [Defendant] shall not, within any geographic area where [Plaintiff] provides goods and/or services compete, indirectly or directly with [Plaintiff]." (Doc. 1-1 at 11.) The non-solicitation provision states,

> During [Defendant's] employment with [Plaintiff] and for a period of eighteen months following [Defendant's] termination date, [Defendant] shall not, within any geographic area where [Plaintiff] provides good and/or services . . . directly or indirectly, in any capacity whatsoever other than on behalf of [Plaintiff]; solicit, accept, take away, propose, quote, sell, place, provide, service, renew or divert any client account or customer that [Defendant] had some involvement in proposing, quoting, selling, placing, providing, servicing or renewing. Likewise, [Defendant] shall not cause or contribute to causing a [] customer or client [of Plaintiff] to cease, reduce or refrain from[] transacting business with [Plaintiff].

(*Id.* at 12.)

Defendant resigned from his employment with Plaintiff on March 15, 2024, and Plaintiff conducted an exit interview with Defendant on March 14, 2024. (Doc. 1 at 7.) During the interview, Defendant said "he planned to go into business for

himself performing the same type of diagnostic and calibration services that he performed for" Plaintiff.  (*Id.*)  Also during the interview and in an email Plaintiff sent to Defendant later that day, Plaintiff reminded Defendant of the noncompete and non-solicitation agreements he signed and entered into.  (*Id.*)

Despite this reminder, Defendant left his employment with Plaintiff and began working for Precision Diagnostics LLC, a company that Defendant formed on December 10, 2023, while he was still working for Plaintiff.  (*Id.* at 8.)

Not long after resigning, Plaintiff received reports that Defendant had "called on and serviced" "multiple collision center and body shops" in the Houston area, including more than one location of Joe Hudson Collision Center, Plaintiff's then-client.  (*Id.*)  Plaintiff sent Defendant a cease-and-desist letter "reminding him of his post-employment obligations under [their agreement] and demanding that he immediately stop violating his post-employment restrictive covenants." (*Id.*; doc. 1-1.)  Although Plaintiff demanded a response, Defendant did not respond to the cease-and-desist letter.  (Doc. 1 at 9.)  According to Plaintiff, Defendant "is engaged in substantially the same business as he was engaged in when" Plaintiff employed him, and Defendant's business "is directly competitive with" Plaintiff's business.  (*Id.* at 10.)  Plaintiff also alleges that Defendant "has called on and solicited business from and continues to call on and solicit businesses from [Plaintiff's] clients he called on and serviced while he was employed by [Plaintiff], including but not limited to Joe Hudson Collision Center locations on Cutten Road and on Cypress Creek Parkway in Houston, Texas, and on FM 2920 in Tomball, Texas." (*Id.*)  And Plaintiff has filed a report in the record from an investigator that shows Defendant, with diagnostic tools in hand, spending time with several of Plaintiff's clients.  (Doc. 28-4.)  Plaintiff says it "has lost and is continuing to lose business from the customers [Defendant] has called on in violation" of the noncompete and non-solicitation agreements.  (Doc. 1 at 10.)  Defendant's contractual violations are ongoing,

3

according to Plaintiff, and the harm "demonstrate[s Defendant's] intent to continue his conduct unabated." (*Id.* at 11.)

The Fair Competition Agreement also includes a forum-selection clause and choice-of-law provision, stating the contract "shall be construed" under Alabama law and that any "legal suit, action, or proceeding arising out of or related to this Agreement or the matters contemplated hereunder shall be instituted in the federal courts of the United States or the courts of the State of Alabama in each case having jurisdiction over or located in Montgomery County, Alabama, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding and waives an objection based on improper venue or forum non conveniens." (Doc. 1-1 at 16.)

Plaintiff filed suit on May 23, 2024, claiming Defendant breached the noncompete and non-solicitation provisions of the Fair Competition Agreement, and it seeks injunctive relief together with monetary damages. (*See generally* doc. 1.) Plaintiff sought a temporary restraining order and preliminary injunction the day after filing suit. (Doc. 8.) The Court entered a temporary restraining order on May 29, 2024 (doc. 18) and extended it on Plaintiff's request up to and including July 12, 2024, to "allow both parties ample time to prepare for the [evidentiary] hearing and give Defendant an opportunity to appear and respond before the hearing." (Doc. 22 at 2.)

The Court held a preliminary injunction hearing on July 9, 2024. At the hearing, Plaintiff supplemented its previously submitted exhibits with calculations of its projected lost profits from Defendant's alleged breach of contract, declarations from Plaintiff's employees, invoices from jobs Defendant completed for Plaintiff's clients in Texas during Defendant's employment with Plaintiff, and the report of a private investigator (with photographs of Defendant, his vehicle, and some of his equipment) Plaintiff hired to ascertain whether Defendant continues to violate the

temporary restraining order and Fair Competition Agreement. Although Defendant was properly served and provided notice of these proceedings, he has not appeared in this case. In fact, after the temporary restraining order was entered and Defendant received it, Defendant approached Plaintiff's private investigator and said, "there is no non[]compete, it[']s illegal." (Doc. 28-4 at 4; doc. 33-11 at 7.)

## III. STANDARD OF REVIEW

"The grant or denial of a preliminary injunction is a decision within the sound discretion of the district court." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983). The Court accepts as true all "uncontroverted affidavits" and well-pleaded factual allegations when considering Plaintiff's requested relief. *Alabama v. United States Dep't of Com.*, 546 F. Supp. 3d 1057, 1063 (M.D. Ala. 2021) (quoting *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976)).

To succeed, Plaintiff carries the burden to satisfy the *Winter* factors, through which it "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## IV. ANALYSIS

Plaintiff already achieved a temporary restraining order under a test substantially similar to the *Winter* factors (doc. 18), Defendant was on notice of the preliminary injunction proceedings yet did not appear in the suit, and Plaintiff submitted evidence sufficient to support a preliminary injunction.

### A. Substantial Likelihood of Success on the Merits

Accepting Plaintiff's allegations as true, together with the evidence submitted, Plaintiff has shown a substantial likelihood that it will succeed on both of its breach of contract claims. The parties agreed that Alabama law will apply in any lawsuit concerning the noncompete and non-solicitation provisions (doc. 1-1 at 16) and

5

Alabama substantive choice-of-law rules apply. *Unisource Worldwide, Inc. v. South Central Ala. Supply, LLC*, 199 F. Supp. 2d 1194, 1200 (M.D. Ala. 2001) ("The substantive choice-of-law rules of the state in which the court sits are used to determine which state's law applies."). In Alabama, such provisions are valid and enforceable. Ala. Code §§ 8-1-190(b)(4) & (5) (restrictive covenants not to compete and not to solicit are allowed to preserve protectable interests); Ala. Code § 8-1-192 ("In order to be valid," a restrictive covenant must "be reduced to writing, signed by all parties, and be supported by adequate consideration."); *Corson v. Universal Door Sys., Inc.*, 596 So. 2d 565, 568 (Ala. 1991) (stating continued employment and compensation for that employment is adequate consideration for a restrictive covenant and holding restrictive covenant was valid and enforceable).[1] Plaintiff has therefore shown it will likely prevail on its arguments that the provisions are valid and enforceable, that Defendant breached the agreements when he established and began to run a business in direct competition with Plaintiff while also soliciting and servicing Plaintiff's clients immediately following his resignation from employment with Plaintiff, and that Plaintiff suffered damages as a result of Defendant's breach.

**B. Irreparable Injury**

Plaintiff has shown Defendant will continue to compete with Plaintiff's business and solicit its clients absent immediate preliminary relief. Alabama law

---

[1] Plaintiff's alleged harm is occurring in Texas and noncompete and non-solicitation provisions are generally valid and enforceable under Texas law, if those provisions meet the statutory requirements. *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 536 (5th Cir. 2020) (affirming district court's preliminary injunction because movant showed a substantial likelihood of success regarding the enforceability of a noncompetition agreement between the parties under Texas law); *Miner, Ltd. v. Anguiano*, 383 F. Supp. 3d 682, 695, 701, 706 (W.D. Tex. 2019) (granting preliminary injunction after concluding movant was substantially likely to show noncompete and non-solicitation provisions were valid and enforceable under Texas law). But the Court need not decide whether Plaintiff has shown a substantial likelihood of success that the noncompete and non-solicitation provisions here would be valid and enforceable under Texas law as well as Alabama law.

6

recognizes that such a prima facie showing gives rise to a rebuttable presumption of irreparable injury to Plaintiff. *Ormco Corp. v. Johns*, 869 So. 2d 1109, 1119 (Ala. 2003). *See also Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (injury is irreparable "if it cannot be undone through monetary remedies"); *Robinson v. Marshall*, 450 F. Supp. 3d 1293, 1297–98 (M.D. Ala. 2020) (injury is irreparable when time is a factor and delay would prevent recourse). Plaintiff has submitted evidence showing that Defendant has continued to compete with Plaintiff and solicit Plaintiff's clients despite knowing that this Court has issued a temporary restraining order prohibiting him from doing so. Plaintiff has also submitted evidence showing that many of its clients have all but ceased doing business with Plaintiff immediately following Defendant's separation from employment. Accordingly, Plaintiff has made a sufficient showing it is likely to suffer an irreparable injury absent preliminary relief.

**C. Balance of Equities**

The balance of equities also weighs heavily for a preliminary injunction. Absent relief, Plaintiff will continue to lose the benefit of its bargain with Defendant and face the ongoing threat of lost business relationships. *Feil v. Wittern Grp., Inc.*, 784 So. 2d 302, 309 (Ala. Civ. App. 2000) ("[A] person who signs a contract is on notice of those terms contained in the contract and is bound by those terms." (citing *Power Equip. Co. v. First Ala. Bank*, 585 So. 2d 1291 (Ala. 1991)). Any harm to Defendant will not be so great because the Court will simply require him "to do that which he willingly promised"—refrain from competing with Plaintiff and soliciting its clients for a fixed period of time within in a specific, limited geographic region. *HB&G Bldg. Prods., Inc. v. Digger Specialties, Inc.*, No. 2:22-cv-329-ECM, 2022 WL 1913604, at *7 (M.D. Ala. June 3, 2022) (citation omitted).

**D. Public Interest**

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Common sense instructs us that the "public has a strong interest in requiring parties to comply with written contracts, and the [C]ourt 'does not believe that requiring [Defendant] to comply with [his] freely-agreed-to-contract would disserve the public interest." *Signature Util. Servs., LLC v. Jernigan*, No. 2:21-cv-102-AMM, 2021 WL 1318678, at *13 (N.D. Ala. Feb. 8, 2021) (quoting *Mercedes-Benz U.S. Int'l, Inc. v. Cobasys, LLC*, 605 F. Supp. 2d 1189, 1207 (N.D. Ala. 2009)). A preliminary injunction here will not be adverse to the public interest.

**E. Security**

Plaintiff posted two cash bonds of $5,000 each as security for the temporary restraining order, pursuant to Federal Rule of Civil Procedure 65(c). (Doc. 18; doc. 19; doc. 23). Plaintiff argued $5,000 was appropriate security for the initial period of the temporary restraining order because Defendant's standard monthly salary while employed by Plaintiff "was $1,250 per week, or $5,000 per month, plus commissions." (Doc. 8 at 22 (quoting doc. 1-2 at 2).) Since Plaintiff must give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained[,]" Fed. R. Civ. P. 65(c), additional security in the amount $10,000 is proper here. *See Baldwin v. Express Oil Change, LLC*, 87 F.4th 1292, 1301 (11th Cir. 2023) (citing Fed. R. Civ. P. 65(c)) (stating "the choice of whether to set a bond" and the "amount of" any such bond "is within the sound discretion of the district court").

## V. CONCLUSION

Accordingly, it is **ORDERED** as follows:

1. Plaintiff's *Motion for Preliminary Injunction* (doc. 8) is **GRANTED**;

2. **Defendant Chad Wilken shall immediately cease and refrain from the following activities until this case is resolved**:

    (a) soliciting, promoting, or participating in the solicitation of any person or business who is or was a customer or client of Plaintiff within Harris, Montgomery, and Fort Bend Counties, Texas and with whom Defendant Chad Wilken worked or had business contact with during his employment with Plaintiff;

    (b) soliciting business from any entity that is a customer or client of Plaintiff within Harris, Montgomery, and Fort Bend Counties, Texas and for which Defendant Chad Wilken provided services within the twelve months immediately preceding the date of his termination from employment with Plaintiff; and

    (c) providing mobile and on-site diagnostic and/or calibration services to collision and body repair facilities located within Harris, Montgomery, and Fort Bend Counties, Texas, including providing pre- and post-collision repair diagnostics, ADAS-related calibrations, re-flashing, and programming.

3. Defendant Chad Wilken is **DIRECTED** to preserve and demand the preservation of all computer, computer tablet, phone, texting device, external media (CD's, thumb drives, and the like), e-mail (Gmail, Hotmail, and the like), or cloud-based storage (Dropbox, iCloud, and the like) information on which he has stored any communication or information with, about, referring to and/or relating to Plaintiff, and/or any of its confidential business information and trade secrets, including but not limited to customer and potential customer lists, customer and potential customer contact information, compilations of customer information, customer credit and financial information, number and type of equipment owned or leased by customers and potential customers, and Plaintiff's internal marketing

strategies, among other things, and/or on which Defendant Chad Wilken has accessed Plaintiff's computers and/or computer network.

4. Plaintiff shall, within forty-eight (48) hours, post additional security, in the form of a cash bond, corporate surety bond, or other form approved by the Court, in the amount of **$10,000.00** for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined. If a bond is not filed within forty-eight hours as required, the preliminary injunction will dissolve by operation of law;

5. This Order shall go into effect immediately and remain in full force until the case is resolved, final judgment is entered**,** or the Court orders otherwise;

6. Plaintiff shall serve a copy of this Order on Defendant by means reasonably calculated to give notice and in compliance with Federal Rule of Civil Procedure 4.

7. Plaintiff's *Motion for Default Judgment* (doc. 28) is **DENIED as moot** to the extent it seeks preliminary relief by default. Plaintiff's *Motion to Hold Chad Wilken in Contempt* (doc. 28) remains pending.

8. Plaintiff's *Motion for Expedited Discovery* (doc. 3) is **DENIED as moot**.

**DONE** on this the 10th day of July 2024.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE